**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**MELANIE S.,**

      **Plaintiff,**

**v.**                          **Case No.: 3:25-cv-00526**

**FRANK BISIGNANO,
Commissioner of Social Security,**

      **Defendant.**

**<u>PROPOSED FINDINGS AND RECOMMENDATIONS</u>**

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401–433, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381–1383f. The matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross motions for judgment on the pleadings, as articulated in their briefs. (ECF Nos. 7, 10).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 7); **GRANT** Defendant's request to affirm the Commissioner's decision, (ECF No. 10); **AFFIRM** the decision of

the Commissioner; and **DISMISS** this action and **REMOVE** it from the docket of the Court.

## I.        **Procedural History**

Plaintiff Melanie S. ("Claimant") protectively filed DIB and SSI applications on August 23, 2021, alleging disability beginning on October 15, 2019, due to "anxiety, bipolar, schizophrenia, and blood clotting disorder." (Tr. at 208-11, 263). The Social Security Administration denied Claimant's applications initially and upon reconsideration. (Tr. at 74, 75, 81, 93). Claimant filed a written request for a hearing, which was held on April 23, 2024, before an Administrative Law Judge ("ALJ"). (Tr. at 41-68). By written decision dated July 24, 2024, the ALJ found that Claimant was not disabled within the meaning of the Social Security Act. (Tr. at 17-32). Claimant requested review by the Appeals Council, which denied the request on July 2, 2025. (Tr. at 1-6). Accordingly, the ALJ's decision became the final decision of the Commissioner.

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner filed a Transcript of Administrative Proceedings. (ECF No. 6). Claimant filed a Brief in Support of Complaint, and the Commissioner filed a Brief in Support of Defendant's Decision to which Claimant filed a reply. (ECF Nos. 7, 10, 11). Accordingly, the matter is fully briefed and ready for resolution.

## II.       **Claimant's Characteristics**

Claimant was 22 years old on her alleged onset date. (Tr. at 31). She has at least a high school education and previously worked in childcare. (Tr. at 61, 263).

### III.  <u>Summary of the ALJ's Decision</u>

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments

3

do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d. 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* §§ 404.1520a(b), 416.920a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. §§ 404.1520a(c), 416.920a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* §§ 404.1520a(d), 416.920a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal

4

limitation in the claimant's ability to do basic work activities. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status requirements of the Social Security Act through December 31, 2026. (Tr. at 19). At step one, the ALJ concluded that Claimant had not engaged in substantial gainful activity since October 15, 2019, the alleged onset date. (*Id.*). At step two, the ALJ assessed that Claimant had the severe impairments of anxiety disorder, bipolar disorder, post-traumatic stress disorder, blood clotting disorder, and chronic right popliteal deep vein thrombus. (Tr. at 20). At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (*Id.*). The ALJ further adjudged that Claimant had moderate limitations in each of the four paragraph B functional areas. (Tr. at 21-22).

The ALJ then assessed Claimant's residual functional capacity ("RFC") as follows:

> [C]laimant has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can climb ramps and stairs frequently; climb ladders, ropes, or scaffolds occasionally; maintain balance over narrow, slippery, or erratically moving surfaces frequently; stoop frequently; kneel frequently; crouch frequently; crawl frequently; can work at unprotected heights occasionally work in close proximity to (i.e., within arm's reach of) dangerous moving mechanical parts occasionally; must avoid concentrated exposure to vibration; is able to perform simple, routine tasks; is able to perform simple work-related decisions; is limited to jobs that require no more than occasional interactions with people of the work place (supervisors, co-workers, and the public); and is able to tolerate few changes in a routine work setting defined as a stable work environment, where work place and work process remain generally the same 2/3 of the time.

(Tr. at 22).

At step four, the ALJ found that Claimant was unable to perform her past relevant work. (Tr. at 30). At step five, the ALJ concluded that, considering Claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Claimant can perform. (Tr. at 31). Accordingly, the ALJ concluded that Claimant was not disabled within the meaning of the Social Security Act from her alleged onset date through the date of the decision. (Tr. at 32).

## IV.    **Claimant's Challenges to the Commissioner's Decision**

Claimant initially raised three challenges to the Commissioner's decision. First, she argued that the ALJ found severe mental impairments and moderate paragraph B limitations but failed to include a corresponding limitation in the RFC. (ECF No. 7 at 2-7). Second, she argued that the ALJ cherry-picked the record when evaluating her mental impairments under the paragraph B criteria, particularly by relying on generally normal mental status findings while discounting evidence of psychiatric decompensation and hospitalization. (*Id*. at 7-9). Third, she argued that the ALJ failed to consider whether she

was unable to sustain competitive work activity for a continuous period of twelve months. (*Id.* at 9-11).

The Commissioner responds that the ALJ's RFC accounted for Claimant's moderate mental limitations by restricting her to "'simple, routine tasks', 'perform simple work-related decisions,' with only 'occasional interaction with people of the work place (supervisors, co-workers, and the public), tolerate few changes in the routine work setting defined as a stable work environment, where work place and work process remain generally the same 2/3 of the time.'" (ECF No. 10 at 21). The Commissioner further argues that the ALJ considered the record as a whole, including Claimant's psychiatric admissions, reports of improvement with medication, daily activities, and generally normal mental status findings. (*Id.* at 21-22). Finally, the Commissioner contends that the RFC necessarily reflects Claimant's ability to perform work on a regular and continuing basis. (*Id.* at 22-24).

In reply, Claimant withdrew her first challenge, conceding that the limitation to routine tasks adequately reflected a diminution in her capacity to perform simple work consistent with the moderate limitations found by the ALJ. (ECF No. 11 at 1). Claimant maintains, however, that remand is required because the ALJ allegedly cherry-picked the record in evaluating the paragraph B criteria and failed to address whether she could sustain competitive work activity for a continuous twelve-month period. (*Id.* at 2-7).

## V.    **Relevant Evidence**

The undersigned has reviewed all of the evidence before the Court. The following evidence is most relevant to the issues in dispute.

### A. Treatment Records

Claimant was hospitalized at St. Mary's Medical Center from October 15, 2019, through November 6, 2019, for suicidal ideation. (Tr. at 366). On admission, Claimant reported that she wanted to die and had not been eating, drinking, sleeping, showering, or dressing for five to seven days. (*Id.*). Records from that hospitalization reflect that Claimant had recently quit her job from a day care facility because it was too stressful. (Tr. at 378). Claimant was diagnosed with unspecified psychosis and schizoaffective disorder, psychotic. (Tr. at 374).

Claimant was again hospitalized at St. Mary's Medical Center from November 18, 2019, through December 13, 2019, for depression and suicidal ideation. (Tr. at 623). Providers described Claimant as significantly withdrawn and in a quasi-catatonic state. (*Id.*). Claimant was diagnosed with unspecified psychosis with episodic catatonia and paranoid features, anxiety disorder, and post-traumatic stress disorder. (Tr. at 627).

At a January 6, 2020, hematology follow-up, the provider noted that Claimant previously had been "very psychotic completely catatonic with no response" and that electroconvulsive therapy had been planned but was not performed because she "responded very well." (Tr. at 839). The provider further noted that Claimant was "totally communicative" at that visit and walked to the clinic. (*Id.*).

On November 25, 2020, Claimant reported improvement in her symptoms. (Tr. at 2219). She denied suicidal ideation, hallucinations, and delusions. (*Id.*). On February 11, 2021, Huntington Behavioral Health records reflect that Claimant was alert and oriented to time, place, and person; had intact insight and judgment; normal language; normal mood and affect; normal speech; no hallucinations or delusions; and no suicidal or homicidal ideation. (Tr. at 2218).

8

On July 9, 2021, Claimant reported that she had an inpatient admission at St. Mary's for mental health issues, but she stated that she was feeling much better, sleeping better, denied medication side effects, and denied self-harm and suicidal ideation. (Tr. at 1682). On examination, Claimant appeared well groomed and well nourished; was engaged, pleasant, and cooperative with good eye contact; had full-range affect, generally good and euthymic mood, spontaneous and fluid speech, alert and attentive cognition, no gross memory abnormalities, linear and goal-directed thought form, no evidence of suicidal ideation or delusions, and intact judgment. (Tr. at 2213).

Claimant received inpatient psychiatric treatment at Mildred Mitchell Bateman Hospital from August 15, 2021, through August 18, 2021. (Tr. at 3943). Her admission and discharge diagnoses were chronic post-traumatic stress disorder and severe recurrent major depressive disorder. (*Id.*).

On November 13, 2023, Claimant reported that she was doing well overall and felt that her anxiety, depression, and mood were stable, although she had experienced one episode of thoughts of self-harm since her prior visit. (Tr. at 3686). On examination, Claimant was cooperative, well groomed, well developed, and well nourished; was alert and oriented to time, place, and person; had intact insight and judgment; normal language; normal mood and affect; normal speech; no hallucinations or delusions; and no suicidal or homicidal ideation. (Tr. at 3688).

On February 12, 2024, Claimant reported that she was doing well overall and felt that her anxiety, depression, and mood were stable. (Tr. at 3976). She denied recent thoughts of self-harm and suicidal ideation. (*Id.*). Claimant reported that she continued watching her seven siblings, which could be stressful. (*Id.*).

### B. Opinions

At the initial level, the state agency psychological consultant found that there was insufficient evidence in the file. (Tr. at 72, 79). Claimant underwent a consultative psychological examination on April 12, 2023. On examination, Claimant presented with an anxious mood, but she demonstrated good judgment and insight; normal memory and concentration; and the ability to remain on task, reflecting normal persistence and pace. (Tr. at 3219–24).

At the reconsideration level, the state psychological consultant concluded that Claimant's mental impairments were non-severe, finding no limitation in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself, and a mild limitation in interacting with others. (Tr. at 87-88, 98-99).

### C. Claimant's Statements

At the administrative hearing, Claimant testified that she experiences ongoing mental health symptoms, including anxiety, depression, and difficulty being around other people. (Tr. at 54-55, 59). She reported that she has difficulty concentrating, completing tasks, and handling stress. (Tr. at 55-57). Claimant further testified that she experiences panic symptoms and prefers to avoid social interaction. (Tr. at 51-53). Claimant also reported limitations in her ability to sustain activity over time, stating that her symptoms interfere with her ability to maintain focus and complete tasks on a consistent basis. (Tr. at 55-57).

In her function report, Claimant stated that she is able to perform personal care, prepare simple meals, and complete household chores. (Tr. at 289-95). She also reported that she is able to drive and leave her home independently. (*Id.*). However, Claimant

10

indicated that she has difficulty interacting with others and handling stress due to her mental health symptoms. (*Id.*). More recent records reflect that Claimant reported caring for her siblings, which she described as stressful. (Tr. at 3976).

## VI.     <u>Standard of Review</u>

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a de novo review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to ensuring that the ALJ followed applicable Regulations and Rulings in reaching his decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII.     <u>Discussion</u>

Claimant's challenges concern her mental impairments, including the ALJ's paragraph B analysis at step two and the ALJ's RFC assessment.

### A. Paragraph B Analysis

Claimant argues that the ALJ cherry-picked the record when evaluating the paragraph B criteria by relying on a normal February 2024 mental status examination while ignoring her psychiatric hospitalizations and more severe symptoms. (ECF Nos. 7 at 7-9, 11 at 1-4). An ALJ may not selectively cite evidence supporting nondisability while ignoring evidence that supports disability. *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017); *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 98 (4th Cir. 2020). At the same time, the Court must read the ALJ's decision as a whole and may not reweigh conflicting evidence or substitute its judgment for the ALJ's. *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018); *Hays*, 907 F.2d at 1456.

The record supports Claimant's contention that she experienced serious psychiatric symptoms during the relevant period. Claimant was hospitalized from October 15, 2019, through November 6, 2019, for suicidal ideation; reported wanting to die and not eating, drinking, sleeping, showering, or dressing for five to seven days; and was diagnosed with unspecified psychosis and schizoaffective disorder, psychotic. (Tr. at 366, 374). She was again hospitalized from November 18, 2019, through December 13, 2019, for depression and suicidal ideation, and providers described her as significantly withdrawn and in a quasi-catatonic state. (Tr. at 623). Her diagnoses included unspecified psychosis with episodic catatonia and paranoid features, anxiety disorder, and post-traumatic stress disorder. (Tr. at 627). Claimant was hospitalized again from February 2, 2022, through February 12, 2022, for suicidal ideation with a plan to overdose on medications. (Tr. at 1732). At discharge, her diagnoses included major depressive disorder, recurrent severe, not psychotic; history of post-traumatic stress disorder and psychosis; and schizoaffective disorder, depressed. (Tr. at 1735).

However, the ALJ did not ignore this evidence. The ALJ expressly acknowledged Claimant's hospitalizations, including the 2019 inpatient treatment, her psychotic symptoms, her catatonic presentation, and her February 2022 hospitalization. (Tr. at 23-28) (citing discussion of Claimant's hospitalizations and mental symptoms). The ALJ also found multiple severe mental impairments at step two, including anxiety disorder, bipolar disorder, and post-traumatic stress disorder. (Tr. at 20). The ALJ then found moderate limitations in all four paragraph B areas rather than no or mild limitations. (Tr. at 21-22). Thus, this is not a case in which the ALJ dismissed Claimant's mental impairments or failed to recognize the serious evidence in the record.

The ALJ also considered evidence showing improvement, stability, and functioning after Claimant's acute episodes. At a January 2020 follow-up, a provider noted that Claimant previously had been "very psychotic completely catatonic with no response," but also noted that she "responded very well," was "totally communicative," and walked to the clinic. (Tr. at 839). In November 2020, Claimant reported improvement in her symptoms, and she denied suicidal ideation, hallucinations, and delusions. (Tr. at 2219). In February 2021, Huntington Behavioral Health noted that Claimant was alert and oriented, had intact insight and judgment, normal mood and affect, normal speech, no hallucinations or delusions, and no suicidal or homicidal ideation. (Tr. at 2218). In July 2021, Claimant reported feeling much better and sleeping better after an inpatient admission, denied medication side effects, and denied self-harm and suicidal ideation. (Tr. at 1682). Examination findings around that time reflected good grooming, cooperative behavior, good eye contact, full-range affect, euthymic mood, alert and attentive cognition, no gross memory abnormalities, linear and goal-directed thought form, no suicidal ideation or delusions, and intact judgment. (Tr. at 2213).

13

The later record contains similar findings. At a consultative psychological examination in April 2023, Claimant was cooperative, well groomed, alert and oriented, with intact insight and judgment, normal mood and affect, normal speech, no hallucinations or delusions, and no suicidal or homicidal ideation. (Tr. at 3219-20). On November 13, 2023, Claimant reported that she was doing well overall and felt that her anxiety, depression, and mood were stable, although she reported one episode of thoughts of self-harm since her prior visit. (Tr. at 3686). On examination, she was cooperative, well groomed, alert and oriented, with intact insight and judgment, normal mood and affect, normal speech, no hallucinations or delusions, and no suicidal or homicidal ideation. (Tr. at 3688). On February 12, 2024, Claimant again reported doing well overall, with stable anxiety, depression, and mood; denied recent thoughts of self-harm, suicidal ideation, hallucinations, and delusions; and reported that she continued watching her seven siblings. (Tr. at 3976).

This longitudinal evidence demonstrates that the ALJ considered both Claimant's periods of decompensation and her subsequent improvement and stability. The ALJ did not rely on a single normal examination while ignoring contrary evidence; rather, the ALJ acknowledged Claimant's psychiatric admissions and severe symptoms and then weighed that evidence against subsequent treatment notes reflecting improvement, stable mood, intact cognition, normal thought processes, and the absence of hallucinations, delusions, or suicidal ideation. (Tr. at 23-28, 839, 1682, 2213, 2219, 3219-20, 3686, 3688, 3976). An ALJ does not cherry-pick the record by weighing conflicting evidence and finding that severe impairments produce significant, but not disabling, limitations. *See Conner v. Kijakazi*, No. 3:21-cv-00022, 2022 WL 873682, at *9 (S.D.W. Va. Mar. 7, 2022) (rejecting cherry-picking argument where the ALJ considered conflicting evidence and explained

14

the RFC); *Lora H. v. Kijakazi*, No. 2:22-cv-00211, 2022 WL 18717795, at *13 (S.D.W. Va. Nov. 2, 2022) (distinguishing *Arakas* where the ALJ addressed qualifying evidence and limitations).

The ALJ's paragraph B findings are also consistent with the RFC. The ALJ did not find Claimant free from mental limitations. He limited her to simple, routine tasks; simple work-related decisions; no more than occasional interaction with supervisors, coworkers, and the public; and few changes in a routine work setting. (Tr. at 22). Those restrictions directly correspond to the ALJ's paragraph B findings of moderate limitations in concentration, social interaction, and adaptation and reflect the ALJ's determination that Claimant's impairments imposed real, but not disabling, work-related limitations. The Fourth Circuit has rejected a categorical rule requiring particular RFC language based solely on moderate paragraph B findings; the issue is whether the ALJ's explanation permits meaningful review. *Shinaberry v. Saul*, 952 F.3d 113, 121-22 (4th Cir. 2020); *Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017).

The explanation here permits meaningful review. The ALJ recognized Claimant's severe mental impairments, acknowledged her psychiatric hospitalizations, considered her allegations and treatment history, and included mental restrictions in the RFC. (Tr. at 20-28). Claimant identifies evidence that could support a more restrictive finding, but the Court may not reweigh that evidence when the ALJ considered the competing evidence and built a logical bridge to the result. *Hays*, 907 F.2d at 1456; *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). Accordingly, the undersigned **FINDS** that Claimant has not demonstrated reversible error in the ALJ's evaluation of the paragraph B criteria or the related mental health evidence.

**B. RFC**

15

Claimant argues that the ALJ failed to account for her ability to sustain work activity on a regular and continuing basis, emphasizing her psychiatric hospitalizations and episodic symptoms. (ECF Nos. 7 at 9-11, 11 at 4-7). An RFC assessment represents the most a claimant can do despite her limitations and must reflect the ability to perform work on a "regular and continuing basis," meaning eight hours a day, five days a week. SSR 96-8p, 1996 WL 374184, at *1. However, the ALJ is not required to recite this standard verbatim; the question is whether the decision, read as a whole, demonstrates that the ALJ considered the claimant's ability to sustain work over time. *Shinaberry*, 952 F.3d at 121-22; *Sizemore*, 878 F.3d at 80-81. An ALJ satisfies this requirement where the RFC assessment and accompanying narrative discussion demonstrate that the claimant can perform work activities on a sustained basis, even if the ALJ does not explicitly recite the "eight hours a day" language. *Shinaberry*, 952 F.3d at 121-22; *Sizemore*, 878 F.3d at 80-81.

The record confirms that Claimant experienced episodic exacerbations of her mental impairments. As discussed above, Claimant was hospitalized twice in 2019 for suicidal ideation and severe psychiatric symptoms, including psychosis and a quasi-catatonic state. (Tr. at 366, 623). She was again hospitalized in February 2022 for suicidal ideation with a plan to overdose on medications. (Tr. at 1732). This evidence confirms that Claimant's impairments can become severe during discrete episodes requiring hospitalization.

However, the ALJ did not ignore these episodes. The decision reflects that the ALJ considered Claimant's hospitalizations and the severity of her symptoms but evaluated them within the context of the longitudinal record. (Tr. at 23-28). Following her 2019 hospitalizations, a provider noted in January 2020 that Claimant had previously been

16

"very psychotic completely catatonic with no response," but had "responded very well" and was "totally communicative." (Tr. at 839). In November 2020, Claimant reported improvement in her symptoms, and she denied suicidal ideation, hallucinations, and delusions. (Tr. at 2219). In February 2021, treatment notes documented that Claimant was alert and oriented, with intact insight and judgment, normal mood and affect, normal speech, and no hallucinations, delusions, or suicidal or homicidal ideation. (Tr. at 2218).

Similar findings appear throughout the record. In July 2021, Claimant reported that she was feeling much better after an inpatient admission, denied medication side effects, and denied self-harm and suicidal ideation. (Tr. at 1682). Examination findings reflected cooperative behavior, euthymic mood, alert and attentive cognition, linear and goal-directed thought processes, no evidence of suicidal ideation or delusions, and intact judgment. (Tr. at 2213). At a consultative psychological examination in April 2023, Claimant was again described as cooperative, well groomed, alert and oriented, with intact insight and judgment, normal mood and affect, normal speech, and no hallucinations, delusions, or suicidal or homicidal ideation. (Tr. at 3219-20). In November 2023, Claimant reported that she was doing well overall and felt that her anxiety, depression, and mood were stable, despite one episode of self-harm thoughts, and examination findings remained largely normal. (Tr. at 3686, 3688). By February 2024, Claimant again reported that she was doing well overall, with stable symptoms, denied suicidal ideation, hallucinations, and delusions, and reported caring for her siblings. (Tr. at 3976).

This longitudinal evidence supports the ALJ's determination that, although Claimant experienced episodic exacerbations, her symptoms improved with treatment and did not preclude sustained work activity over time. The ALJ accounted for Claimant's

17

mental limitations by restricting her to simple, routine tasks; simple work-related decisions; no more than occasional interaction with supervisors, coworkers, and the public; and few changes in a routine work setting. (Tr. at 22). These limitations reasonably accommodate Claimant's moderate limitations in concentration, persistence, social interaction, and adaptation, which are the precise areas implicated by her argument. The record does not reflect repeated or ongoing decompensation at a frequency or duration that would preclude full-time work on a regular and continuing basis.

The ALJ's decision, read as a whole, reflects consideration of Claimant's ability to sustain work over time. The ALJ evaluated both the periods of decompensation and the subsequent improvement and stability reflected in the treatment notes, and incorporated mental limitations into the RFC consistent with that evidence. (Tr. at 20-28). Although Claimant points to evidence that could support a more restrictive finding, the Court may not reweigh that evidence where the ALJ has considered the competing evidence and reached a conclusion supported by substantial evidence. *Hays*, 907 F.2d at 1456; *Monroe*, 826 F.3d at 189. That is not the Court's role on substantial evidence review.

Accordingly, the undersigned **FINDS** that the ALJ adequately accounted for Claimant's ability to sustain work activity on a regular and continuing basis and that the RFC is supported by substantial evidence.

## VIII.  <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** that the District Court:

1. **DENY** Claimant's request for judgment on the pleadings, (ECF No. 7);

2. **GRANT** the Commissioner's request to affirm the decision, (ECF No. 10);

18

3.  **AFFIRM** the final decision of the Commissioner;

4.  **DISMISS** this action; and

5.  **REMOVE** this matter from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** April 30, 2026

Joseph K. Reeder
United States Magistrate Judge

19